UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- ---------------------------------------------------------------------- x

Anthony Molinari                                    1:24-cv-02594-HG
*Plaintiff*

-against-                                           **AMENDED COMPLAINT**

Costco Capital Corp., Costco Companies Inc.,
Costco Wholesale Corporation

*Defendant*

- ---------------------------------------------------------------------- x

SIRS AND MADAMES

    Plaintiff Anthony Molinari ("Plaintiff"), by and through his attorneys Wiss & Partners LLP, respectfully avers the following as true:

## FACTS COMMON TO ALL COUNTS

1. This is an action sounding in retaliation and constructive dismissal.

2. Plaintiff resides at 23 Idaho Ave., Staten Island, New York.

3. Plaintiff is now a twenty-three (23) year old man

4. Defendant Costo Capital Corp. was a corporation registered in the State of Delaware.

5. Defendant Costco Capital Corp. is now a corporation registered in a State of the United States of America.

6. Defendant Costco Capital Corp is now a corporation or company doing business in a State of the United States of America.

7. Defendant Costco Companies Inc was a  corporation registered in the State of

Delaware.

8. Defendant Costco Companies Inc. is now a corporation duly registered in a State of the United States of America.

9. Defendant Costco Companies Inc. is now a corporation or company doing business in a State of the United States of America.

10. Defendant Costco Wholesale Corporation is a corporation registered in the State of Washington.

11. Defendant Costco Wholesale Corporation owns a building located at 2975 Richmond Ave., Staten Island New York 10314 -5851.

12. Defendant Costco Wholesale Corporation manages a building located at 2975 Richmond Ave., Staten Island New York 10314 -5851.

13. Defendant Costco Wholesale Corporation controls a building located at 2975 Richmond Ave., Staten Island New York 10314 -5851.

14. On or before November 5, 2021, Costco Wholesale Corporation by its agents, servants and/or employees controlled the Costco retail store at 2975 Richmond Ave., Staten Island New York 10314 -5851.

15. On or before November 5, 2021, Costco Wholesale Corporation by its agents, servants or employees managed the Costco retail store at 2975 Richmond Ave., Staten Island New York 10314 -5851.

16. On or before November 5, 2021, Costco Wholesale Corporation  by its agents, servants or employees supervised the Costco retail store at 2975 Richmond Ave., Staten Island New York 10314 -5851.

17. That on or before November 5, 2021   Costco Wholesale Corporation

contracted to supply goods and/or services in the State of New York.

18. That on or before November 5, 2021 Costco Wholesale Corporation hired and retained employees to provide services in the State of New York.

19. Unum Insurance Agency LLC is a domestic company registered in the State of Delaware.

20. Unum Insurance Agency LLC does business in the State of New York at all relevant times.

21. Unum Insurance Agency LLC is an agent of Costco Capital Corp, Costco Companies Inc. and/or Costco Wholesale Corporation ("Costco")

22. Plaintiff was employed by Costco Wholesale Corporation as a seasonal employee during the Christmas season of 2018/2019.

23. Costco Wholesale Corporation hired Plaintiff for the position of "Cashier's Assistant, Front End" immediately after the 2018/2019 Christmas season ended.

24. Plaintiff was diagnosed with Hashimoto's Thyroiditis and Chron's Disease prior to commencing work at Costco Wholesale Corporation.

25. Plaintiff was hired by Costco Wholesale Corporation after the 2018/2019 Christmas season on a reduced weekly schedule of twenty-five (25) hours per week.

26. Plaintiff was hired by Costco Wholesale Corporation with the agreement that he would receive bathroom breaks as needed,

27. Plaintiff was accommodated on account of his disability at the time he was hired

28. Plaintiff's weekly income at Costco Wholesale Corporation was $475 gross.

29. Plaintiff had medical insurance and unemployment insurance through his job at Costco Wholesale Corporation.

30. There was a worldwide pandemic due to an infectious disease known as "Covid-19" which shut down non-essential service on or about March 2020.

31. Plaintiff continued to work his twenty five (25) hours per week job at Costco Wholesale Corporation located at 2975 Richmond Ave., Staten Island New York 10314 -5851.

32. During the pre-vaccination pandemic, the majority of New Yorkers stayed home and exercised social distancing to protect their own health and the health of their loved ones.

33. Plaintiff is and was in a vulnerable class for Covid-19.

34. Plaintiff stayed loyal to Costco Wholesale Corporation throughout the pandemic working his twenty five (25) hours per week.

35. Plaintiff was rewarded for outstanding service as an Essential Worker by four (4) raises, bringing his pay rate up from sixteen dollars ($16) to nineteen dollars ($19) per hour.

36. Plaintiff received a twenty seven percent (27%) pay raise during the pandemic.

37. After the Covid-19 vaccines rolled out, new Costco Wholesale Corporation recruits were paid seventeen dollars ($17) per hour.

38. Costco Capital Corp., Costco Companies Inc. and/or Costco Wholesale Corporation saved millions of dollars by discarding the workers who received l o y a l t y raises during the pandemic.

39. Costco Capital Corp., Costco Companies Inc. and/or Costco Wholesale Corporation saved three thousand and nine hundred dollars ($3,900.00) per annum per person they terminated.

40. Costco Capital Corp., Costco Companies Inc. and/or Costco Wholesale Corporation would save three hundred and ninety million dollars ($390,000,000.00) per annum if one hundred thousand (100,000) of their employees who received loyalty bonuses were terminated and replaced with new hires.

41. Plaintiff was placed on an exit route from Costco Wholesale Corporation.

42. Defendants Costco Capital Corp, Costco Companies Inc. and Costco Wholesale Corporation had a well thought out scheme to push Plaintiff out.

43. Plaintiff received a Verbal Warning from Costco Wholesale Corporation for using his smartphone to figure out an adjustment for a bottle deposit in May 2021.

44. Plaintiff received a Verbal Warning for using his smartphone to check the time at the request of a customer during May 2021.

45. Plaintiff tried to explain to Costco Wholesale Corporation that his smartphone use was to enhance his performance on the job, even offering his phone for inspection.

46. Plaintiff was ridiculed by a supervisor at Costco Wholesale Corporation for having to use his calculator app for "simple math".

47. The Costco Employee Handbook does not prohibit an employee from using a smartphone to enhance work performance.

48. Plaintiff reminded Assistant General Managers Matt Lazarus and "Dean" of his disability due to an auto-immune disorder on or about July 23, 2021.

49. Plaintiff reminded Assistant General Managers Matt Lazarus and "Dean" of his disability, secondary to an auto-immune disorder again during the week of July 27, 2021.

50. Plaintiff reminded Matt Lazarus and "Dean" of his disability as he had work-related anxiety which had triggered a flare up of his Chron's Disease.

51. Plaintiff received two "Written Warnings" from Costco Wholesale Corporation.

52. Plaintiff was assigned to work as a Cashier, a duty outside the scope of his job title, description and paygrade.

53. Plaintiff received accommodations, including being permitted to take bathroom breaks, while others covered his register.

54. When an item was allegedly missed at check-out at Costco Whoelsale Corporation, Plaintiff was written up for it.

55. Plaintiff was not given an opportunity to view surveillance footage to see if he was on his register for that customer and/or if the customer attempted to steal the item after check-out and before exiting the store.

56. Plaintiff was written up for a missed item when he was not even on the register, versus packing the cart for a customer.

57. Costco Wholesale Corporation refused to allow Plaintiff to defend himself for the infractions.

58. The Costco Wholesale Corporation Employee handbook provides that all Costco Wholesale Corporation employees, including Plaintiff, can defend themselves against allegations of infractions by Costco Wholesale Corporation.

59. Costco Wholesale Corporation violated their own handbook.

60. Plaintiff was discriminated against as an employee with a disability.

61. Plaintiff received a gift of a special vacation for his 21st birthday.

62. Plaintiff duly notified Mr. Binns a Manager of Costco Wholesale Corporation of

his personal time off well before the one (1) hour advance notice provided in Section 11.4(3)(c) of the Costco Employee Handbook.

63. Plaintiff and Mr. Binns had a thorough discussion about this vacation the day before Plaintiff went on vacation

64. When Plaintiff returned from vacation on August 18, 2021, Costco Wholesale Corporation called him in for a meeting with their agents "Yris" (Supervisor) and "Dean" (Assistant General Manager).

65. Plaintiff was told by servants, agents, and/or employees of Costco Wholesale Corporation to sign a form agreeing to a three (3) day suspension

66. Plaintiff asked to consult with legal representation.

67. Costco Wholesale Corporation (Dean and Yris) refused to give Plaintiff a copy of the documents or allow him to make a phone-call unless he signed it first.

68. Plaintiff signed under the duress of losing his job and losing his health insurance.

69. Plaintiff revoked that signature within the requisite seventy-two (72) hours of signing.

70. Plaintiff had a health set back on account of the actions of Costco placing him on an exit route, including a flare up of his Hashimoto's Thyroiditis and Chron's Disease.

71. Plaintiff submitted a doctor's note with respect to a one (1) week unpaid leave of absence and then returned to his job duties at Costco.

72. While Defendants Costco Wholesale Corporation, Costco Capital Corp and Costco Companies Inc. executed their scheme to replac Plaintiff, Plaintiff also endured bullying and humiliation in apparent retaliation for trying to remain employed in spite of his salary being apparently too high for Costco Capital Corp., Costco Companies Inc. and/or Costco Wholesale Corporation.

73. Plaintiff endured changes to his hours, duties and assignments, which confused and damaged him.

74. Plaintiff was bagging groceries one day; the next day he was told to stand behind dead chickens all day.

75. Plaintiff became the recipient of snide remarks and comments on a regular and frequent basis.

76. While the stress added to Plaintiffs digestive tract symptoms, he feared being bullied when he left his station to go to the restroom.

77.      On July 23, 2021 at 4:30pm Plaintiff clocked in to work and "Tommy", a Produce Stocker said "Hey Anthony, whose ass are you kissing to get the early shifts?" at which time Phil, an Area Manager, responded "you have no idea what he's been doing."

78. Plaintiff was teased and taunted and slurs were used against him.

79. There was a pattern and practice of defaming Anthony to other workers, claiming he is "not a team player" and "wasn't moving quick enough". Other workers were being turned against him.

80. When Plaintiff would be written up and Plaintiff would be asked to sign a paper, the supervisors and managers would point at him and talk about him in a loud manner in which other employees would hear.

81. There was a constant barrage of remarks by agents servants and employees of Costco Wholesale Corporation against Plaintff.

82. Defendants had a carefully thought out and planned technique designed to break Plaintiff.

83. On August 27, 2021 Dr. Todd B. Linden MD FACP (Board certified gastroenterologist and internal medicine practitioner) faxed a letter to Costco regarding Plaintiff's leave of absence from August 22 through August 28, 2021.

84.     On September 3, 2021 Plaintiff was coming back from break and asked Costco agent, servant and/or employee Marco Rashid, Front End Supervisor, if he could use the restroom and Marco said "you can't go, you had a break." Plaintiff was humiliated and embarrassed.

85. During the week of September 6, 2021 through September 13, 2021 Costco agent, servant, and/or employee Michelle Fields (Closing Supervisor) said "what happened to you. You used to be a great employee and work all these hours and now your work has really gone downhill" at which time Plaintiff responded that Costco Wholesale Corporaion agent, servant, and/or employee Arman (Front End Manager) had just complimented Plaintiff and said that his performance had improved.

86.     On September 13, 2021 at 12:30pm Plaintiff was by the Self-Checkout assisting Costco members when Costco agent, servant and/or employee Eric Kuecollo (sic) came over to Plaintiff and said "why do you keep pacing back and forth" and demanded "stop pacing.".

87. On September 21, 2021 at 11:l5am Plaintiff was by Self-Checkout assisting members and Costco agent, servant and/or employee "Eric" said "stop talking to yourself, what's wrong with you" and then continued "stop talking to yourself, stay focused" in a hostile manner.

88. On September 29, 2011 between 1pm and 3pm Costco agent, servant and/or employee Brian (Assistant General Manager), told Plaintiff to not to return to his job

as a Cashier's Assistant and to go stand by the dead chickens.

89.     Plaintiff was with the dead chickens by himself for an hour and had no idea what he was supposed to do there. It was hot. When the next person came in and took the chickens out of the oven, Plaintiff put the chickens into containers.

90. On October 5, 2021 between 10:00am and 12:30pm Plaintiff had stomach problems and Costco agent, servant and/or employee Kim (Front- End Manager) questioned his need to go to the bathroom but said

"what do you want to do, go text", only letting him go when he started to have pains.

91. Plaintiff felt morally and psychologically abused over having to use the bathroom.

92. Plaintiff was told to collect the carts outside in the cold evenings which started to fall below freezing. When others were allowed to take breaks inside to warm up, Plaintiff was told to stay outside in the cold.

93. Plaintiff asked for Family Medical Leave.Defendant Unum Insurance is an agent of Costco Wholesale Corporation, Costco Capital Corp. or Costco Companies Incwhich sent a letter sent to Plaintiff. asking for further information about his disability to be submitted by October 3, 2021.

94. The letter asking for information to be submitted by October 3, 2021 was received on October 6, 2021.

95. The letter stated that his request for unpaid FMLA will be denied if he did not respond to it three days before he received the letter.

96. Plaintiff could not take Family Medical Leave.

97. Plaintiff was humiliated in front of an audience including Costco agent, servant, and/or employees including Michael Passante (Front End Assistant) and Daniel Maniscalco

(Front End Assistant) in addition to Costco Members who shopped at Costco Wholesale Corporation.

98. Plaintiff was left outside with the carts in inclement weather and taunted for it. At night and before the store closed it was below freezing and the Assistant General Manager "Diane" would tell the supervisor "Eric" to let him come inside and warm up and "Eric" would let the others come in to warm up but not Anthony.

99. Plaintiff endured a refrain of "we're going to get you" from Costco agent, servant and/or employee Arman (Front End Manager) in front of Kimberly (Front End Supervisor).

100.    On November 4, 2021, Plaintiff spoke with a healthcare provider about the effects of enduring a hostile work environment.

101.    Plaintiff submitted a resignation letter to Costco Wholesale Corporation on November 5, 2021.

102.    Plaintiff did not show up on his regularly scheduled workday November 5, 2021.

103.    Plaintiff was unable to return to work on account of the hostile environment.

104.    Plaintiff was constructively dismissed from Costco Wholesale Corporation.

105.    Plaintiff applied for unemployment benefits.

106.    Plaintiff was certified for weekly unemployment compensation benefits on November 8, 2021 and at all relevant times thereafter.

107. Plaintiff continued to be certified for benefits for four (4) months.

108. Plaintiff's benefits were calculated at $0 per week.

109.       Plaintiff met his base period of employment.

110. Plaintiff paid all of his unemployment insurance premiums.

111.    Plaintiff sought an explanation as to why his benefits were $0 per month

from  the Department of Labor.

112.    Plaintiff sought an explanation as to why his benefits were $0 per month from  local politicians.

113.    On February 25, 2022 Costco Wholesale Corporation contested  Plaintiff's application  for unemployment benefits.

114.    Costco Wholesale Corporation claimed Plaintiff was discharged for reasons other than lack of work.

115.    Plaintiff received a letter from Matt Canciere at the New York Department of Labor claiming that Plaintiff's application for unemployment was denied as he was terminated for cause.

116. Plaintiff sought review of his unemployment compensation determination.

117.    Costco Wholesale Corporation requested a medical letter with respect to Plaintiff's condition on or about November 5, 2021.

118.    Plaintiff submitted a letter dated April 7, 2022 from Dr. Todd B. Linden MD FACP (Board certified gastroenterologist and internal medicine practitioner) to Costco Wholesale Corporation regarding Plaintiffs medical condition during November 2021.

119.    Matt Canciere at the New York Department of Labor furnished an amended determination providing that Plaintiff quit his job.

120.    Plaintiff requested an unemployment compensation hearing.

121. Plaintiff was present for his telephonic unemployment hearing on June 16, 2022 at 1pm.

122.    Plaintiff's witness was present for his telephonic unemployment hearing on

June 16, 2022 at 1pm.

123.    Plaintiff's attorney was present for his telephonic unemployment hearing on June 16, 2022 at 1pm.

124.    Defendant Costco Wholesale Corporation was not present for the telephonic unemployment hearing on June 16, 2022 at 1pm.

125.    Judge Kerry Mierzwa from the Department of Labor refused to allow Plaintiff to put on a case.

126.    Judge Kerry Mierzwa defaulted the telephonic hearing, against the wishes of Plaintiff, his witness and his counsel at 2:04pm on June 16, 2022.

127.    Plaintiff received a determination that Plaintiff had defaulted for his unemployment hearing.

128.    Costco Capital Corp., Costco Companies Inc and/or Costco Wholesale Corporation have lobbyists working for them in Albany, New York.

129.    An appeal was filed for Plaintiff with the Unemployment Insurance Appeal Board on July 5, 2022.

130.    Plaintiff duly followed up with the Unemployment Insurance Appeal Board.

131.    No new date for a hearing was scheduled by the New York State Unemployment Appeals.

132.    Plaintiff received a check for $67.67 on October 6, 2023. This was for $42.65 of wage payments he was not given and $17.63 in liquidated damages.

133.    Plaintiff did not cash the check as he opted out of a class action settlement.

134.    The class action settlement did not involve anything to do with Costco Capital Corp., Costco Companies Inc. and/or Costco Wholesale Corporation scheme to save money in loyalty raises given to essential workers by placing them on the exit route.

135.     Plaintiff has mitigated damages.

136.     Plaintiff since took and passed the writtem exam to be a New York City Police Officer.

137.     Plaintiff has an interim job in a warehouse.

138.     Plaintiff was proud to work at a Fortune 500 Company, Costco. Had he not been placed on an exit route in a scheme to save money in loyalty raises, he would have stayed there and made it his career.


**AS AND FOR A FIRST CAUSE OF ACTION IN
CONSTRUCTIVE DISMISSAL AGAINST
COSTCO CAPITAL CORP., COSTCO
COMPANIES INC. and COSTCO
<u>WHOLESALE CORPORATION</u>**

139.     Plaintiff repeats, reiterates and realleges the allegations in paragraph one ("l ") through one hundred and  thirty eight ("138") as though more fully alleged herein.

140.     Plaintiff worked for Costco Wholesale Corporation since December 2018.

141.     Plaintiff was a tenured employee who received health insurance, amongst other benefits.

142.     Plaintiff was loyal to Costco Capital Corp. and Costco Companies Inc.and Costco Wholesale Corporation,  throughout the Covid-19 pandemic.

143.     Plaintiff received four (4) loyalty raises during the Covid-19 Pandemic.

144.     Plaintiffs total loyalty raise was 27% of his income.

145.     After the vaccinations rolled out, Plaintiff was placed on an exit route.

146.     Costco Capital Corp., Costco Companies Inc. and/or Costco Wholesale Corporation schemed to terminate Plaintiff  and replace him with a cheaper hire to save money in loyalty raises.

147.     Plaintiff received two verbal warnings during May 2021.

148.        Plaintiff used his smartphone twice at work.

149.        Plaintiff used a calculator app on his smartphone to assist the Cashier figure out a buttle

deposit.

150.        Plaintiff used his smartphone to check the time for a customer.

151. Plaintiff tried to explain that his smartphone was used to enhance his performance on

the job.

152. Plaintiff offered his smartphone for inspection to prove that he did not do what he was

accused of doing. He was not given a right to defend himself.

153.        Plaintiff was ridiculed for having to use his smartphone for simple math.

154.          Plaintiff received two verbal warnings, although the Employee Handbook did not

prohibit his use of a smartphone.

155. Plaintiff reminded Assistant General Managers Matt Lazarus and Dean of his disability,

secondary to an auto-immune disorder on or about July 23, 2021 and again during the week

of July 27, 2021.

156.        Work-related anxiety triggered a flare up of Plaintiffs Chron's Disease.

157.        Plaintiff then received two written warnings from Costco.

158.          Plaintiff was assigned to work as Cashier, a duty outside the scope of his job title,

description and paygrade.

              Plaintiff was accommodated by being permitted to take bathroom breaks,

while others covered his register.

159. Plaintiff was written up for an item missing at check out.

160.          Plaintiff was not given an opportunity to view surveillance footage to see if he

was on his register for that customer and/or if the customer attempted to steal the item

after check-out and before exiting the store.

161.     Plaintiff was also written up for a missed item when he was not even on the register, versus packing the cart for a customer.

162.  Costco did not allow Plaintiff to defend himself.

163.     Plaintiff received a gift of a special vacation for his 21st birthday. A family member provided for the vacation.

164.  Plaintiff notified his Manager of his personal time off in advance of the one-hour advance notice provided in *Section l l.4(3)(c) of the Employee Handbook.*

165.     Plaintiff had a complete discussion about this vacation the day before his vacation.

166.     When Plaintiff returned to Costco on August 18, 2021 his Supervisor (Yris)called him in to talk in a meeting which included the Assistant General Manager (Dean).

167.     Plaintiff was told to sign a form agreeing to a three (3) day suspension.

168.     Plaintiff said he was not comfortable signing it and he asked for representation. Costco Wholesale Corporation , via their agents, servants or employees Dean and Yris, refused to give Plaintiff a copy of the document unless he signed it first.

169.  Costco, via their agents, servant or employees, refused to allow Plaintiff to make a phone call as he had requested.

170.     Plaintiff signed under the duress of losing his job and losing his health insurance.

171.     Plaintiff revoked that signature within the requisite seventy-two (72) hours of signing.

172.  Plaintiff had a health set back on account of the actions of Costco placing him on an exit route, including a flare up of his Hashimoto's Thyroiditis and Chron's Disease.

173.  Plaintiff submitted a doctor's note with respect to a one-week unpaid leave of absence and then returned to his job duties at Costco.

174. Plaintiff notified Costco that he was represented by counsel.

175. Plaintiff was handed papers to sign to justify his previously approved leave of absence.

176. Costco Agent Unum Insurance asked Plaintiff to sign authorizations for the release of his entire health record with a disclaimer that they would be shared with other phantom third parties. There was no valid reason proffered as to why Costco and /or Unum needed these confidential records when it had a doctor's note.

177. Plaintiff endured bullying and humiliation in apparent retaliation for trying to remain employed.

178. Plaintiff endured changes to his hours, duties and assignments, which served to discombobulate him.

179. Plaintiff was tasked with bagging groceries one day and the next he stood in the heat behind dead chickens all day and the next was on cart duty outside.

180. Plaintiff became the recipient of snide remarks and comments on a regular and frequent basis.

181. Plaintiff was sent over to the Pizza counter, without any training, being set up to fail.

182. The newer people coming in were getting the regular shift while Plaintiff was left on the Garveyard shift.

183. The stress of the hostile environment digestive symptoms caused Plaintiff digestive problems.

184. Plaintiff was bullied when he left his station to go to the restroom.

185. On July 23, 2021 at 4:30pm Plaintiff clocked in to work and Tommy, a Produce Stocker said "Hey Anthony, whose ass are you kissing to get the early shifts?" at which time Phil, an Area Manager, responded "you have no idea what he's been doing".

186. On September 3, 2021 Plaintiff was coming back from break and asked Marco Rashid, Front End Supervisor, if he could use the restroom and Marco said "you can't go, you had a break" and Anthony just went anyway, albeit feeling humiliated and embarrassed.

187.     During the week of September 6 through 13th 2021 Michelle Fields, Closing Supervisor, said "what happened to you? You used to be a great employee and work all these hours and now your work has really gone downhill" at which time Plaintiff responded that Arman, Front End Manager had just complimented him and said that his work had improved.

188.     On September 13, 2021 at 12:30pm Plaintiff was by the Self- Checkout assisting members and Eric Kuecollo (sic) came over to him and said "why do you keep pacing back and forth?" and demanded "stop pacing".

189. On September 21 at 11:15am Plaintiff was by Self-Checkout assisting members and Eric said "stop talking to yourself, what's wrong with you?" and then continued "stop talking to yourself, stay focused" in a hostile manner.

190.     .On September 29 between 1pm and 3pm Brian, Assistant General Manager, told him to not to return to his job as a Cashiers Assistant and to go stand by the dead chickens. Plaintiff was there by himself for an hour and had no idea what he was supposed to do there. It was hot and stressful. When the next person came in and took the chickens out of the oven, Plaintiff put the chickens into containers.

191.     On October 5, 2021 between 10:00am and 12:30pm Plaintiff had stomach problems and Kim, Front end Manager, questioned his need to go to the bathroom but said "what do you want to do, go text?", only letting him go when he started to have pain. This humiliation happened in front of an audience including Michael Passante, Front End

Assistant and Daniel Maniscalco, Front End Assistant and Costco members.

192. Plaintiff was told to collect the carts outside in the cold evenings which started to fall below freezing. When others were allowed to take breaks inside to warm up, Plaintiff was told to stay outside in the cold.

192. Plaintiff endured a continuous stream of bullying, which was specifically designed by Costco Capital Corp., Costco Companies Inc. and Costco Wholesale Corporation to be in accordance with current law yet pushed to the limits of breaking him.

193.    The refrain of "we're going to get you" from Arman, Front End Manager in front of Kimberly, Front End Supervisor, and more, drove him towards a breakdown culminating in his constructive dismissal on November 4, 2021.

194.    The constant bullying of Plaintiff in front of both members and employees of the tight knit Staten Island community would give Plaintiff a bad name on the street.

195. Plaintiff needed medical attention on account of the hostile work environment he endured.

196.    Costco constructively dismissed Plaintiff.

197. Costco saved money in pandemic loyalty raises by replacing those who received a raise with cheaper new hires after the vaccines rolled out and people returned to the workforce.

198. In *Martinez v US Fidelity and Guar (4th Cir., 1982)* the appellate courts upheld an Award of $318,761.73 for a breakdown caused by intentional acts at work, as reduced for contributory negligence. Adjusted for inflation at a 2.65% rate that is $883,288.00 in today's money.

199.    Plaintiff was damaged in sums in excess of the jurisdictional limits of the lower courts.

**AS AND FOR A SECOND CAUSE OF ACTION
IN_RETALIATION AGAINST COSTCO CAPITAL
CORP., COSTCO COMPANIES INC. AND
COSTCO WHOLESALE CORPORATION**

200. Plaintiff repeats, reiterates and realleges the allegations in paragraph one ("l")
through one hundred and ninety nine("199") as though more fully alleged herein.

201. Plaintiff commenced work for Costco on or about December 2018.

202. Plaintiff was hired as a tenured employee on or about January 2019

203. Plaintiff was loyal to Costco throughout the Covid-19 pandemic.

204. Plaintiff received four (4) loyalty raises during the Covid-19 Pandemic.

205. Plaintiffs total loyalty raise was 27% of his income.

206. After the Covid-19 vaccinations rolled out, Plaintiff was placed on an exit route.

207. Commencing in May 2011, Plaintiff received two verbal warnings, two written
warnings and a suspension without being afforded an opportunity to defend himself.

208. Plaintiff timely withdrew his consent to a three-day suspension.

209. Thereafter, Plaintiff challenged the reasons for being placed on an exit route by Costco.

210. Plaintiff was retaliated against for exercising his rights under the Employment Contract.

211. Plaintiff endured bullying and humiliation in retaliation for exercising his rights.

212. Plaintiff endured changes to his hours, duties and assignments to discombobulate him, in
retaliation for exercising his rights.

213. Plaintiff was tasked with bagging groceries one day and the next he stood in the heat
behind dead chickens all day and the next was on cart duty outside.

214. Plaintiff became the recipient of snide remarks and comments on a regular and

frequent basis.

215. Plaintiff was sent over to the Pizza counter, without any training, being set up to fail.

216. The newer people coming in were getting the regular shift while Plaintiff was left on the Garveyard shift.

217. The stress of the hostile environment digestive symptoms caused Plaintiff digestive problems.

218 .Plaintiff was then bullied when he left his station to go to the restroom.

219. OnJuly 23, 2021 at 4:30pm Plaintiff clocked in to work and Tommy, a Produce Stocker said "Hey Anthony, whose ass are you kissing to get the early shifts?" at which time Phil, an Area Manager, responded "you have no idea what he's been doing".

220. On September 3, 2021 Plaintiff was coming back from break and asked Marco Rashid, Front End Supervisor, if he could use the restroom and Marco said "you can't go, you had a break" and Anthony just went anyway, albeit feeling humiliated and embarrassed.

221.      During the week of September 6 through 13[th]2021 Michelle Fields, Closing Supervisor, said "what happened to you? You used to be a great employee and work all these hours and now your work has really gone downhill" at which time Plaintiff responded that Arman, Front End Manager had just complimented him and said that his work had improved.

222.      On September 13, 2021 at 12:30pm Plaintiff was by the Self- Checkout assisting members and Eric Kuecollo (sic) came over to him and said "why do you keeppacing back and forth?" and demanded "stop pacing".

223. On September 21 at 11:15am Plaintiff was by Self-Checkout assisting members and Eric

said "stop talking to yourself, what's wrong with you?" and then continued "stop talking to yourself, stay focused" in a hostile manner.

224.      .On September 29 between 1pm and 3pm Brian, Assistant General Manager, told him to not to return to his job as a Cashiers Assistant and to go stand by the dead chickens. Plaintiff was there by himself for an hour and had no idea what he was supposed to do there. It was hot and stressful. When the next person came in and took the chickens out of the oven, Plaintiff put the chickens into containers.

225.      On October 5, 2021 between 10:00am and 12:30pm Plaintiff had stomach problems and Kim, Front end Manager, questioned his need to go to the bathroom but said "what do you want to do, go text?", only letting him go when he started to have pain. This humiliation happened in front of an audience includingMichael Passante, Front End Assistant and Daniel Maniscalco, Front End Assistant and Costco members.

226.  Plaintiff was told to collect the carts outside in the cold evenings which started to fall below freezing. When others were allowed to take breaks inside to warm up, Plaintiff was told to stay outside in the cold.

227.      Plaintiff endured a continuous stream of bullying, which was specifically designed by Costco Capital Corp., Costco Companies Inc. and Costco Wholesale Corporation to be in accordance with current law yet pushed to the limits of breaking him.

228.      The refrain of "we're going to get you" from Arman, Front End Manager in front of Kimberly, Front End Supervisor, and more, drove him towards a breakdown culminating in his constructive dismissal on November 4, 2021.

229.Plaintiff became the recipient of snide remarks and comments on a regular and frequent basis in retaliation for exercising his rights.

230.      Plaintiff was bullied in front of both members and employees of the tight knit

Staten Island community to Plaintiff a bad name on the street in retaliation for exercising his rights.

231.     Defendants Costco Capital Corp, Costco Companies Inc. and Costco Wholesale Corporation schemed to dismiss, replace and then retaliate against Plaintiff in a manner that was designed to break him while being within the confines of their interpretation of the law.

232.     Unum insurance, an agent of Costco, asked repeatedly asked Plaintiff to disclose confidential health information to be used against him.

233. Plaintiff was damaged in sums in excess of the jurisdictional limits of the lower courts on account of Costco retaliating against him for exercising his rights under his Employment Contract.

## AS AND FOR A THIRD CAUSE OF ACTION IN WAGE THEFT AND UNEMPLOYMENT THEFT AGAINST COSTCO CAPITAL CORP., COSTCO COMPANIES INC., AND COSTCO WHOLESALE CORPORATION

234. Plaintiff repeats, reiterates and realleges the allegations in paragraph one ("l") through two hundred and thirty three ("233") as though more fully alleged herein.

235.     Plaintiff was an employee of Costco from on or about December 2018 through November 5, 2021.

236. Plaintiff applied for unemployment benefits on or about November 8, 2021.

237. Plaintiff continued to certify for benefits for four (4) months.

238. Plaintiff's benefits were calculated at $0 per week.

239. Plaintiff met his base period of employment.

240. Plaintiff paid his unemployment premiums.

241.     Plaintiff sought an explanation as to why his benefits were $0 per month from the Department of Labor.

242. Plaintiff sought an explanation as to why his benefits were $0 per month from local politicians.

243. On February 25, 2022 the Costco Defendants contested Plaintiffs application for unemployment benefits.

244. The Costco Defendants claimed Plaintiff was discharged for reasons other than lack of work.

245. Plaintiff received a letter from Matt Canciere at the Department of Labor claiming that Plaintiffs application for unemployment was denied as he was terminated for cause.

246. Plaintiff sought review of this unemployment determination.

247. Costco requested a medical letter with respect to Plaintiffs condition on or about November 5, 2011.

248. Plaintiff submitted a letter dated April 7, 2022 from Dr. Todd B. Linden MD FACP (Board certified gastroenterologist and internal medicine practitioner) to Costco Wholesale Corporation regarding Plaintiffs medical condition during November 2021.

249. Matt Canciere at the Department of Labor furnished an amended determination providing that Plaintiff quit his job.

250. Plaintiff sought review of this unemployment determination and requested an unemployment hearing.

251. Plaintiff was present for his unemployment hearing on June 16, 2022 at 1pm

252. Plaintiffs witness was present for his unemployment hearing on June 16, 2022 at 1pm.

253. Plaintiffs attorney was present for his unemployment hearing on June 16, 2022 at 1pm.

254. Defendant Costco was not present for the unemployment hearing on June 16, 2022 at 1pm.

255. .Judge Kerry Mierzwa from the Department of Labor refused to allow Plaintiff to put on a case.

256. Judge Kerry Mierzwa defaulted the telephonic hearing, against the wishes of Plaintiff, his witness and his counsel at 2:04pm on June 16, 2022.

257. Plaintiff received a determination that he had defaulted for his unemployment hearing.

258. Costco Capital Corp, Costco Companies Inc. and/or Costco Wholesale Corporation pays lobbyists to work for them in Albany, New York.

259. Costco Capital Corp, Costco Companies Inc. and/or Costco Wholesale Corporation saved money in insurance premiums by challenging unemployment benefits.

260. .Plaintiff filed an Appeal with the Unemployment Insurance Appeal Board on July 5, 2022.

261. .Plaintiff duly followed up with the Unemployment Insurance Appeal Board.

262. No new date for a hearing was scheduled by the New York State Unemployment Appeals.

263. Costco Wholesale Corporation did not provide Plaintiff with the official name of the employer, address and phone number of the employer's main office and principal location, amongst other things.

264.        Plaintiff was not paid for his personal days, sick days and vacation days and/or other work that was performed during his tenure with Costco Wholesale Corporation.

265.        Plaintiff was not paid his unemployment benefits despite being constructively discharged from his job through no fault of his own on or about November 5, 2021.

266.    Costco Wholesale Corporation conceded that Plaintiff was not paid by furnishing him a check for $67.67 (which has not been cashed) to Plaintiff on October 6, 2023.

267. Plaintiff was damaged in an amount in excess of the jurisdictional limits of the lower courts.

268. Plaintiff is entitled to triple damages under the Wage Theft Prevention Act.

269. Plaintiff is entitled to attorney fees under the Wage Theft Prevention Act.

## **VENUE**

270.    This Action was removed to the United States District Court  by Costco Wholesale Corporation under Diversity Jurisdiction. *28 USC 1332* .

271.    Plaintiff is a resident of the State of New York. Defendant Costco Wholesale Corporation swears that there is complete diversity of jurisdiction and that the claim is for damages in excess of $75.000.00.

## **JURY DEMAND**

272.     Plaintiff hereby demands trial by jury on all issues triable to a jury lawfully convened.

273.    No prior action for the relief requested herein has been made.

274.    This action was preceded by a good faith attempt to resolve this dispute in advance  of litigation.

**WHEREFORE** Plaintiff demands judgment against the defendants jointly and severally, as follows:

  a.  Awarding Plaintiff damages for constructive dismissal;
  b.  Awarding Plaintiff damages for retaliation;
  c.  Awarding Plaintiff damages in unemployment benefits and wage theft;
  d.  Awarding Plaintiffs punitive damages and attorney fees, costs and expenses; and
  e.  For such other further and different relief as to this Honorable Court seems just, proper and equitable.

Dated:  May 31, 2024

     NY, New York

Wiss & Partners LLP
1178 Broadway 3rd Floor
#1245
New York, NY 10001
Tel: 917-439-0836
Fax: 860-606-9538
email: colleen_kerwick@yahoo.com;
attorneycolleenkerwick@aol.com

## **VERIFICATION**

STATE OF NEW YORK COUNTY OF NEW YORK

Colleen NiChairmhaic, deposes and says:

I am the Attorney for the Plaintiff in the foregoing Amended Complaint. I have read the
foregoing Amended Complaint and know the contents thereof and the same are true of my
own knowledge except as to those matters therein stated to be alleged on information and
belief and, as to those matters, I believe them to be true.  This verification is signed by an
Attorney after reviewing it with the client and his ADA Advocate, as the client is not in
the same County as the Law Office is located.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- -------------------------------------------------------------------------------x

Anthony Molinari
*Plaintiff*

-against-

Costco Capital Inc., Costco Companies Inc.,
Costco Wholesale Corporation, Agency Inc.

*DefendantS*

- -------------------------------------------------------------------------------x

**VERIFIED AMENDED COMPLAINT**

Plaintiff Anthony Molinari
by: Wiss & Partners LLP
1178 Broadway,
Third Floor, Suite 1245
New York, NY
917-439-0836