UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTHONY MOLINARI,

            Plaintiff,

v.

COSTCO CAPITAL INC., COSTCO
COMPANIES INC., and COSTCO
WHOLESALE CORPORATION,

            Defendants.

**MEMORANDUM & ORDER**
24-CV-02594 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    In this employment dispute, Plaintiff Anthony Molinari sued Costco Wholesale Corporation ("Defendant" or "Costco"), alleging constructive discharge, retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and wage and unemployment theft in violation of the New York Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195.[1] ECF No. 25 (Second Amended Complaint; "SAC"). Defendant moves to dismiss these claims under Rules 12(b)(5) and 12(b)(6), or alternatively, moves for a more definite statement under Rule 12(e). ECF No. 27 (Notice of Motion); ECF No. 27-1 (Memorandum of Law in Support of Motion). For the reasons that follow, Defendant's Rule

---

[1]     In addition to Costco Wholesale Corporation, Plaintiff sued Costco Capital Inc. (which he sometimes refers to as Costco Capital Corp.) and Costco Companies Inc. He brought all of his claims, including a racketeering claim, against those three defendants. According to Costco Wholesale Corporation, however, Costco Capital Inc. and Costco Companies Inc. are long-defunct entities. ECF No. 27-1 at 31 (Memorandum of Law in Support of Motion). Accordingly, Plaintiff agreed to dismiss those parties in his Opposition papers, and he conceded that "[t]he termination of [those entities] defeats the cause of action under RICO." ECF No. 28 at 17 n.2 (Memorandum of Law in Opposition to Motion). The Court therefore dismisses the claims against Costco Capital Inc. and Costco Companies Inc. without prejudice, and dismisses Plaintiff's racketeering claim against all three defendants without prejudice.

12(b)(6) motion is granted as to the constructive discharge and retaliation claims, and the Court dismisses the wage and unemployment theft claim under Rule 12(h)(3).[2]

## BACKGROUND[3]

Plaintiff is a former employee of Costco Wholesale Corporation, where he worked at a retail store on Staten Island. SAC ¶¶ 19–21, 27. He was initially hired as a seasonal employee during the 2018-2019 holiday season, but immediately thereafter, he was rehired on a permanent basis. *Id.* ¶¶ 27–28. Plaintiff was rehired as a cashier's assistant, a role that provided health and unemployment benefits. *Id.* ¶¶ 28, 34. Before Plaintiff's employment at Costco, he was diagnosed with Hashimoto's Thyroiditis and Crohn's Disease—both autoimmune disorders. *Id.* ¶¶ 29, 55–56, 162. Costco accommodated Plaintiff's needs "on account of his disability": Plaintiff worked "on a reduced weekly schedule of twenty-five . . . hours per week" "with the agreement that he would receive bathroom breaks as needed." *Id.* ¶¶ 30–32.

During the COVID-19 pandemic, Plaintiff "stayed loyal to Costco" and worked his regular shifts, even though he "is and was in a vulnerable class" because of his autoimmune diseases. *Id.* ¶¶ 38–39. For that, Costco was apparently grateful—Plaintiff received four pay raises, which increased his pay rate from sixteen to nineteen dollars per hour. *Id.* ¶ 40. But after the vaccinations against COVID-19 rolled out, Costco began paying new employees seventeen

---

[2] The Court declines to address Defendant's alternative arguments under Rules 12(b)(5) and 12(e), which are now moot.

[3] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

2

dollars per hour, and allegedly "saved millions of dollars by replacing the workers who received loyalty raises during the pandemic." *Id.* ¶¶ 43–44.

To that end, Plaintiff claims, he "was placed on an exit route" from Costco, which "intentionally devised a scheme to push [him] out." *Id.* ¶¶ 48–49. For instance, although the "Employee Handbook does not prohibit an employee from using a smartphone to enhance work performance," Plaintiff was reprimanded for doing just that. *Id.* ¶¶ 50–54. In May 2021, he received two oral warnings for using his phone on the clock. *Id.* ¶¶ 50–51. "Plaintiff tried to explain . . . that his [phone] use was to enhance his [job] performance"—to help the cashier with calculations and to "check the time at the request of a customer"—and "even offer[ed] his phone for inspection," to no avail.[4] *Id.* ¶¶ 50–52, 156–59.

Against this backdrop, Plaintiff suffered from work-related anxiety, which exacerbated his Crohn's disease, and he "reminded [his superiors] of his disability." *Id.* ¶¶ 55–57. Plaintiff then received two written warnings, which arose from his seemingly temporary assignment to work as a cashier, "a duty outside the scope of his job title, description and pay grade." *Id.* ¶¶ 58–59. Plaintiff "was written up" after two items were "allegedly missed at check-out," including once when he was not even at the register, as Plaintiff had permission "to take bathroom breaks while others covered his register." *Id.* ¶ 60–61, 63. When Plaintiff's superiors wrote him up, they "point[ed] at him and talk[ed] about him in a loud manner" such that other employees could hear. *Id.* ¶ 87. Plaintiff was denied the opportunity to defend himself. *Id.* ¶¶ 62–66.

Plaintiff continued to endure "bullying and humiliation . . . in apparent retaliation for trying to remain employed" with a salary that was "apparently too high for Costco." *Id.* ¶ 79.

---

[4]   Plaintiff was "ridiculed by a supervisor . . . for having to use his calculator [application] for 'simple math.'" SAC ¶ 53.

3

He was subjected to "changes to his hours, duties, and assignments," he "was teased and taunted" by colleagues, and "slurs were used against him." *Id.* ¶¶ 80, 85. For example, when Plaintiff clocked into work one day, a colleague asked, "whose ass are you kissing to get the early shifts?" *Id.* ¶ 84. Another remarked, "you have no idea what he's been doing." *Id.* Others claimed Plaintiff was "not a team player" and "wasn't moving [quickly] enough." *Id.* ¶ 86. Because of these comments, Plaintiff "feared being bullied when he left his station to go to the restroom." *Id.* ¶ 83.

In August 2021, after Plaintiff returned to work from a vacation, he was met with an unpleasant surprise: his supervisor and the Assistant General Manager called him into a meeting and asked him to sign a form agreeing to a three-day suspension. *Id.* ¶¶ 71–72. Despite Plaintiff's request for legal counsel, his superiors refused to allow him to make a phone call until he signed the document, or to give him a copy of the document once he signed it. *Id.* ¶¶ 73–74. Plaintiff signed the form "under the duress of losing his job and losing his health insurance," but he "revoked [his] signature within the requisite seventy-two . . . hours of signing" and "challenged the reasons for [his] being placed on an exit route." *Id.* ¶¶ 75–76, 221. The stress aggravated Plaintiff's Hashimoto's Thyroiditis and Crohn's Disease, and after submitting a doctor's note, he took a one-week unpaid leave of absence. *Id.* ¶¶ 77–78.

When Plaintiff returned to work in September, things went from bad to worse. His superiors repeatedly denied his requests to use the restroom, *id.* ¶¶ 91, 96, and one supervisor asked, "what happened to [him]," observing that he "used to be a great employee," but that his "work [had] really gone downhill," *id.* ¶ 92.[5] At one point, in a bizarre incident, the Assistant General Manager asked Plaintiff not to return to his work as a cashier's assistant and to instead

---

[5] Additionally, when Plaintiff was helping customers, a colleague asked what was wrong with him and demanded that he "stop pacing" and "stop talking to [himself]." *Id.* ¶¶ 93–94.

"stand by dead chickens," which he did by himself for an hour with no additional context or instruction. *Id.* ¶ 95. Finally, Plaintiff was tasked with collecting carts outside in below-freezing temperatures, and while others took breaks inside to warm up, "Plaintiff was told to stay outside in the cold." *Id.* ¶¶ 98, 104. After a manager told Plaintiff, "[W]e're going to get you," he experienced a breakdown that led to his resignation. *Id.* ¶¶ 105, 199.

Plaintiff submitted his resignation letter on November 5, 2021. *Id.* ¶ 107. He then applied for unemployment benefits but received a determination of default, which he appealed. *Id.* ¶¶ 111, 133, 135. In Plaintiff's view, he was wrongly denied unemployment benefits and "was not paid for his personal days, sick days[,] . . . vacation days and/or other work" he performed during his tenure at Costco. *Id.* ¶ 265–66.

On October 6, 2023, Plaintiff received a check for $67.67 pursuant to a class action settlement with Costco related to wage theft. *Id.* ¶ 138. Under the terms of that agreement, which is dated April 22, 2022, class members "who [chose] to opt-out of the settlement" were required to "mail via First Class United States Mail, postage prepaid, or otherwise provide an Opt-Out Statement to the Settlement Claims Administrator." ECF No. 27-5, Ex. C § 2.4(A), 17–19. Otherwise, class members agreed to "forever and fully" waive and release "all wage and hour-related claims [against Costco] under the New York Labor Law . . . including but not limited to claims relating to . . . unpaid wages . . . from the beginning of time through the earlier of (a) the date of entry of the Preliminary Approval Order, or (b) 60 days after the filing of the Motion for Preliminary Approval." *Id.* §§ 1.30, 2.4(E), 4.2. Although Plaintiff never cashed the check, SAC ¶ 139, the agreement binds all class members "regardless of whether [the class member] is a [participating class member] or cashes his/her Settlement Check." *Id.* § 4.2.

This suit followed.

5

**LEGAL STANDARD**

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176-cv, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).

**DISCUSSION**

Plaintiff brings three claims against Costco: constructive discharge, retaliation in violation of the ADA, and wage and unemployment theft in violation of the WTPA. None survives scrutiny.

### I.  Constructive Discharge Claim

First, Plaintiff's constructive discharge claim fails right out of the gate, as Plaintiff does not identify the legal basis for the claim, which alone is grounds for dismissal under Rule 8. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Hum. Servs. Council of New York v. City of New York*, No. 21-cv-11149, 2024 WL 4792004, at *29 (S.D.N.Y. Nov. 14, 2024) (dismissing claim under Rule 8 where plaintiff "[did] not specify which laws [had] been violated").

6

But even putting that aside, Plaintiff fails to state a claim of constructive discharge under any law.[6] "To establish a constructive discharge, a plaintiff must show that the employer deliberately made his working conditions so intolerable that he was forced into an involuntary resignation." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993). Plaintiff cannot make this showing simply by alleging that he was "dissatisfied with the nature of his assignments" or "feels that the quality of his work has been unfairly criticized." *Id.* Indeed, "unfair and unwarranted treatment," even "hypercritical supervision," is "by no means the same as constructive discharge." *Id.* "Nor is the standard for constructive discharge merely whether the employee's working conditions were difficult or unpleasant." *Id.*

Here, Plaintiff's allegations involve precisely the sort of unfair criticism and treatment that is insufficient to support a claim of constructive discharge. *See, e.g.*, SAC ¶ 86 (colleagues claimed Plaintiff was "not a team player" and "wasn't moving [quickly] enough"); *id.* ¶ 92 (supervisor remarked that Plaintiff "used to be a great employee" but his "work [had] really gone downhill"); *id.* ¶¶ 50–54 (Plaintiff reprimanded for using his phone for work purposes); *id.* ¶ 59 (Plaintiff assigned to work as a cashier, which did not fall within "his job title, description [or] pay grade"); *id.* ¶¶ 61, 63, 87 (Plaintiff written up, in a non-discrete manner, by supervisors for items missed at check-out); *id.* ¶ 85 (Plaintiff teased and taunted by colleagues). Such criticism, ridicule, and discipline, however unfair, does not give rise to a viable claim of constructive

---

[6]   Constructive discharge claims under federal law, New York State law, and New York City law are "construed similarly." *Gahfi v. N.Y.C. Dep't of Educ.*, No. 23-cv-1782, 2025 WL 675933, at *9 (E.D.N.Y. Feb. 28, 2025). "Even while New York state appellate courts have not determined the precise standard for constructive discharge under the [New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8–101 *et seq.*], they tend to dispose of constructive discharge claims using language that mirrors the federal standard." *Gahfi*, 2025 WL 675933, at *9. Moreover, a constructive discharge claim under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, is "analyzed either in total alignment" with its New York City counterpart or as "a middle ground between the NYCHRL and federal law." *Gahfi*, 2025 WL 675933, at *9.

7

discharge. *See Katz v. Beth Israel Med. Ctr.*, No. 95-cv-7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("An employee is not constructively discharged because she does not like her assignments, receives unfair criticism, or is yelled at by supervisors.").

Plaintiff's allegations of difficult or unpleasant working conditions also fall short. Plaintiff alleges that he was instructed to "stand by dead chickens" and collect carts outside in below-freezing temperatures without breaks. SAC ¶¶ 95, 98, 104. Although those conditions are certainly uncomfortable, they do not amount to the "extremely egregious" circumstances necessary to sustain a constructive discharge claim. *See Todaro v. Siegel Fenchel & Peddy, P.C.*, No. 04-cv-2939, 2008 WL 11446818, at *4 (E.D.N.Y. Aug. 11, 2008) ("Very few courts, when presented with a constructive discharge claim, find that the plaintiff has sufficiently stated the claim.").

Finally, even Plaintiff's claims that he was coerced into signing an agreement to a three-day suspension, and that a manager warned him, "[W]e're going to get you," do not suffice. *See* SAC ¶¶ 72–76, 105, 199. True, these allegations are troubling, but more hostile behavior from supervisors has been found inadequate to state a claim of constructive discharge in this Circuit. *See, e.g.*, *Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11-cv-5093, 2012 WL 4785703, at *1–2, 7 (S.D.N.Y. Oct. 4, 2012) (no constructive discharge where plaintiff was "threatened, berated, and questioned" about leaving her home while working remotely after an injury, "was given the option of resigning or, in the event that she did not resign by 9 A.M. the next morning, being suspended," and was threatened by her supervisor "to have her bar license removed"); *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1149–50, 1156–58 (2d Cir. 1993) (no constructive discharge where plaintiff's supervisor "constant[ly] critici[zed]," "harangued," and "ranted and cursed" at plaintiff).

To sum up, Plaintiff's constructive discharge claim is dismissed under Rule 8, as it does not meet the basic pleading requirement of identifying a law that was purportedly violated. But regardless of which law forms the basis of Plaintiff's claim, it does not withstand Rule 12(b)(6) scrutiny.

## II. Retaliation Claim

Nor does Plaintiff's ADA retaliation claim pass muster under Rule 12(b)(6).[7] To establish a retaliation claim under the ADA, a plaintiff must adequately plead, among other things, that he suffered an adverse employment action because he engaged in a protected activity under the ADA, such as an attempt to assert his disability rights. *Treglia v. Town of Manlius*, 313 F.3d 713, 719–20 (2d Cir. 2002). Not only does Plaintiff not sufficiently allege that he engaged in a protected activity, *see* SAC ¶¶ 55–57, 76, 221 (vaguely alleging that he "reminded [his superiors] of his disability," "revoked [his] signature" on the suspension form, and "challenged the reasons for [his] being placed on an exit route"), but also, he does not allege any causal link between his supposed exercise of a protected activity and an adverse employment action. In fact, Plaintiff's entire theory of the case rests on a separate causal link: Plaintiff purports that Costco "intentionally devised a scheme to push [him] out" because his salary was "apparently too high," not because he participated in a protected activity. SAC ¶¶ 49, 79. Thus, Plaintiff fails to state a claim of retaliation under the ADA.[8]

---

[7]  For the first time in his Opposition papers, Plaintiff cites the NYSHRL, N.Y. Exec. Law § 290, in conjunction with the ADA, to support his retaliation claim. ECF No. 28 at 13. However, because the NYSHRL appears nowhere in the SAC, the Court declines to consider that purported basis for Plaintiff's retaliation claim. *See Thomas v. New York City Dep't of Educ.*, No. 21-1799-cv, 2022 WL 2236948, at *3 (2d Cir. June 22, 2022) (affirming district court's decision not to address claim that was not alleged in complaint but instead raised in subsequent briefing).

[8]  Defendant also argues that Plaintiff's retaliation claim must be dismissed because he failed to exhaust his administrative remedies. ECF No. 27-1 at 15–16; *see Rettino v. N.Y.C.*

9

### III. Wage and Unemployment Theft Claim

Finally, Plaintiff's wage and unemployment theft claim under the WTPA is dismissed under Rule 12(h)(3) on mootness grounds. Costco urges the Court to dismiss Plaintiff's WTPA claim pursuant to Rule 12(b)(6), ECF No. 27-1 at 19, but because that claim is moot, this Court lacks subject-matter jurisdiction to consider it. *See N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (noting that federal courts lack subject-matter jurisdiction over moot claims). Although Costco should have raised its argument under Rule 12(b)(1), *see* Fed. R. Civ. P. 12(b)(1) (permitting a party to assert a lack of subject-matter jurisdiction defense), dismissal is nevertheless required under Rule 12(h)(3), *see* Fed. R. Civ. P. 12(h)(3) (requiring courts to dismiss a claim if they "determine[] at any time that [they] lack[] subject-matter jurisdiction" over that claim).

Plaintiff's WTPA claim is moot because he "forever and fully" waived and released "all wage and hour-related claims [against Costco] under the New York Labor Law" as part of a class action settlement.[9] ECF No. 27-5, Ex. C §§ 1.3, 2.4(E), 4.2. "Because a settlement resolves the live controversy between parties," the Second Circuit has recognized that "a settlement agreement may moot a party's subsequent claims" where, as here, the agreement "reduce[s] [the] potential recovery . . . to zero." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 828 F. App'x 734, 736 (2d Cir. 2020); *see Solis v. 666 Fifth Asociates LLC*, No. 20-cv-5105,

---

*Dep't of Educ.*, No. 19-cv-5326, 2021 WL 2987113, at *4 (S.D.N.Y. July 15, 2021) ("Filing a charge of discrimination with the [Equal Employment Opportunity Commission] is a condition precedent to discrimination claims pursuant to . . . the ADA."). But because Plaintiff fails, in any event, to make out a *prima facie* case of retaliation, the Court need not reach that argument.

[9]    The settlement agreement appended to Defendant's motion papers, ECF No. 27-5, Ex. C, is properly considered, as "the Court has the power and the obligation to consider matters outside the pleadings" when "jurisdictional facts are disputed." *Li v. Napolitano*, No. 08-cv-7353, 2009 WL 2358621, at *1 (S.D.N.Y. July 30, 2009).

2021 WL 5998416, at *3 (S.D.N.Y. Dec. 20, 2021) (Because "Plaintiff agreed to release all claims against Defendant . . . Plaintiff's claims against [Defendant] are therefore moot and the Court lacks subject matter jurisdiction.").

Although Plaintiff denies his membership in the class, he acknowledges that he received a check for $67.67 pursuant to the settlement, SAC ¶¶ 138–39, and he makes no allegation in the SAC, nor claim in his Opposition papers, that he followed the specific protocol to opt out of the class. *See* ECF No. 27-5, Ex. C § 2.4(A); *Marin v. Comenity Bank, LLC*, No. 16-cv-0737, 2017 WL 3670030, at *4 (E.D.N.Y. July 11, 2017) (plaintiff bound as a class member after failing to opt out). Plaintiff further alleges that he never cashed the check, SAC ¶ 139, but the agreement binds all class members, "regardless of whether [the class member] is a [participating class member] or cashes his/her Settlement Check." ECF No. 27-5, Ex. C § 4.2. Thus, Plaintiff's wage and unemployment theft claim is moot, as "the relief sought can no longer be given," and under Rule 12(h)(3), this Court "must dismiss the [claim] for lack of subject matter jurisdiction." *Li v. Napolitano*, No. 08-cv-7353, 2009 WL 2358621, at *3 (S.D.N.Y. July 30, 2009).[10]

---

[10] Plaintiff's argument that the "class action was for a time frame of November 2018 to September 2020, which was long before Costco started to place [Plaintiff] . . . on the exit route," ECF No. 28 at 9, is belied by the plain language of the settlement agreement. Pursuant to the agreement, Plaintiff "forever and fully" waived and released "all wage and hour-related claims [against Costco] under the New York Labor Law" including "claims relating to . . . unpaid wages . . . from the beginning of time through the earlier of (a) the date of entry of the Preliminary Approval Order, or (b) 60 days after the filing of the Motion for Preliminary Approval." ECF No. 27-5, Ex. C §§ 1.30, 2.4(E), 4.2. Because the parties did not even sign the agreement until April 22, 2022, *id.* at 17–19, the relevant period for the released claims must end *after* that date, and thus encapsulate Plaintiff's claims, which arose in 2021. Likewise, Plaintiff's argument that the subject of the settlement agreement "has nothing to do with" Plaintiff's wage and unemployment theft claim is unavailing. ECF No. 28 at 8. The settlement agreement plainly covers Plaintiff's claim, as it is a "wage and hour-related claim[] [against Costco] under the New York Labor Law" for "unpaid wages" that arose during the relevant period.

11

## CONCLUSION

For the reasons set forth herein, Plaintiff's SAC is dismissed. *See* ECF No. 25. Plaintiff's constructive discharge and retaliation claims are dismissed with prejudice under Rule 12(b)(6), and his wage and unemployment theft claim is dismissed without prejudice under Rule 12(h)(3). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.[11]

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
April 17, 2025

---

[11] Although Plaintiff does not seek leave to amend the SAC, for the avoidance of doubt, the Court does not grant him leave to further amend. Despite Plaintiff's multiple opportunities to amend, he still fails to sufficiently state his claims.